UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
GARDEN CITY BOXING CLUB, INC.,
as Broadcast Licensee of the November 27, 2004,
Barrerra/Morales Program,

                    Plaintiff,          **MEMORANDUM and ORDER**

        -against-                    05-CV-3685 (SLT)

JUAN RODRIGUEZ, Individually and as an
officer, director, shareholder and/or principal of
D'AMIGOS RESTAURANT CORP. d/b/a
D'AMIGOS RESTAURANT a/k/a D'AMIGOS
REST. CORP. a/k/a D'AMIGAS RESTAURANT
CORP., and D'AMIGOS RESTAURANT CORP.
d/b/a D'AMIGOS RESTAURANT a/k/a
D'AMIGOS REST. CORP. a/k/a D'AMIGAS
RESTAURANT CORP.,

                    Defendants.
----------------------------------------------------------------x

**TOWNES, United States District Judge:**

      In August 2005, plaintiff, a California corporation owning distribution rights to a boxing event – the November 27, 2004, Barrera/Morales Program (the "Program") – brought this action pursuant to 47 U.S.C. §§ 553 and 605, alleging that defendants unlawfully intercepted the Program and showed it to patrons at D'Amigos Restaurant in Ridgewood, New York. After defendants failed to answer or respond to its complaint and First Amended Complaint, plaintiff filed this motion for a default judgment, seeking statutory damages of up to $10,000 pursuant to 47 U.S.C.§605(e)(3)(C)(i)(II); enhanced damages of up to $100,000 pursuant to 47 U.S.C. §605(e)(3)(C)(ii); and costs and attorneys' fees. For the reasons stated below, plaintiff's motion is granted and judgment shall be entered against defendants, jointly and severally, in the amount of $13,845.40.

The Consequences of Defendants' Default

"Where, as here, 'the court determines that [a] defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Chen v. Jenna Lane, Inc.*, 30 F. Supp 2d 622, 623 (S.D.N.Y. 1998) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2688, at 58-59 (3d ed. 1998)). Accordingly, by defaulting in this case, defendants have conceded, *inter alia*, that they (1) "willfully violated 47 U.S.C. § 605(a)" by intercepting plaintiff's signal and/or using an illegal cable converter device to intercept plaintiff's broadcast, First Amended Complaint at ¶¶ 19-21, and (2) violated 47 U.S.C. § 553 by wilfully and illegally intercepting the Program "when it was distributed and shown by cable television systems." *Id.* at ¶ 34-35.[1]

Although defendants have admitted liability under both § 605 and § 553, plaintiff "can recover under only one statute." *Kingvision Pay-Per-View Ltd. v. Brito*, No. 05 CV 1042 (GBD) (RLE), 2006 WL 728408, at *1 (S.D.N.Y. Mar. 20, 2006) (Report and Recommendation of Ellis, M.J.) (citing *International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 129 (2d Cir. 1996)). Since

---

[1]Plaintiff's First Amended Complaint also alleges upon information and belief that defendants violated 47 U.S.C. § 605(e)(4), which prohibits the modification or utilization of a "device or equipment, knowing or having reason to know that [it] . . . is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for [another] . . . activity" prohibited by 47 U.S.C. § 605(a). *See* First Amended Complaint at ¶ 27. However, very similar allegations have been held to be insufficient to create liability under § 605(e)(4). *See, e.g., Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064 (FB) (KAM), 2005 WL 2476264, at *5 (E.D.N.Y. Oct. 7, 2005). As the *Morales* Court noted, "several district courts have recognized [that] . . . § 605(e)(4) . . . is aimed at upstream manufacturers and distributors, not the ultimate consumer of pirating devices." *Id.* (internal citations and quotations omitted). Allegations of the sort contained in plaintiff's First Amended Complaint do not support a finding that defendants were "more than 'ultimate consumers' or 'end users' of an illegally modified device, as opposed to 'upstream manufacturers and distributors' of such a device" and, therefore, provide an insufficient factual basis for finding liability under § 605(e)(4). *See id.* Accordingly, to the extent that plaintiff's motion can be read as requesting damages for a violation of § 605(e)(4), this Court declines to award such damages.

§605(e) provides "far more severe penalties than those of § 553(c)," *International Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1007 (2d Cir. 1993), plaintiff has elected to pursue remedies under § 605. Plaintiff's Memorandum of Law ("Pl. Memo") at 5.

Damages Under § 605

Section 605(e) provides, *inter alia*, that any person aggrieved by a violation of § 605(a) can bring a civil action in district court, in which the court:

> (i) may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of . . . [§ 605(a)];
>
> (ii) may award damages as described in subparagraph (C); and
>
> (iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

47 U.S.C. § 605(e)(3)(B)(i)-(iii). Subparagraph (C) permits the recovery of either actual damages under (C)(i)(I), or statutory damages under (C)(i)(II). Plaintiff expressly requests that this Court award statutory damages. Pl. Memo at 5.

The statutory damages provision, § 605(e)(3)(C)(i)(II), provides, in pertinent part:

> [T]he party aggrieved may recover an award of statutory damages for each violation of [§ 605(a)] . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . .

In addition, § 605(e)(3)(C)(ii) states:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of [§ 605(a)] . . . .

Although § 605 provides little guidance as to how to set damages within the statutory range, "courts in this circuit have relied upon one of two methods of calculating statutory

3

damages in cases involving the unauthorized receipt and exhibition of pay-per-view events." *Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064 (FB) (KAM), 2005 WL 2476264, at *6 (E.D.N.Y. Oct. 7, 2005) (Report and Recommendation of Matsumoto, M.J.) (citing *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999)). First, in cases where the exact number of patrons is unknown, courts have awarded flat sums based on what the court considers just. *See*, *e.g.*, *Entertainment by J & J, Inc. v. Suriel*, No. 01 Civ. 11460 (RO), 2003 WL 1090268, at *1 (S.D.N.Y. Mar. 11, 2003) (awarding $11,000 in statutory damages); *Home Box Office v. Champs of New Haven, Inc.*, 837 F. Supp. 480, 484 (D. Conn. 1993) (awarding $10,000 in statutory damages). Second, "[i]n cases where there is uncontradicted evidence of the number of patrons viewing the match in the establishment, courts have . . . multiplied the number of patrons by a set sum," and have awarded that amount "plus any cover charges or other profits attributable to the unauthorized viewing." *Morales*, 2005 WL 2476264, at *6. The "set sum" varies widely, with some courts awarding as little as $20, *see Time Warner Cable v. Sanchez*, No. 02 Civ. 5855 (GBD)(FM), 2003 WL 21744089, at *4 (S.D.N.Y. July 8, 2003), and some courts awarding as much as $300, *see Garden City Boxing Club, Inc. v. Salcedo*, No. 04 Civ. 5027 (DFE), 2005 WL 2898233, at *2 (S.D.N.Y. Nov. 3, 2005).

The plaintiff urges this Court to adopt the approach used in *Garden City Boxing Club, Inc. v. Bello*, No. CV-05-1300 (ARR) (JMA), 2005 WL 2496062, at *6 (E.D.N.Y. Sept. 20, 2005), where the court calculated damages using the seating capacity of the establishment. In *Bello* – a copyright infringement case very similar to the one at bar – an investigator observed fifteen patrons viewing one of plaintiff's copyrighted broadcasts in a restaurant having an estimated capacity of forty people. *Id.* at *2. Reasoning that it was "entirely possible that at

4

some point in the evening the restaurant did indeed hold the maximum number," the *Bello* Court calculated damages by multiplying the price it cost to view the boxing match at a private residence by the estimated capacity of the restaurant. *Id.* at *6.

This Court agrees that in this case, as in *Bello*, it is appropriate to use the private residential rate in calculating damages. According to the affidavit of plaintiff's president, Joseph Gagliardi, dated November 9, 2005 (the "Gagliardi Affidavit"), the "residential price" for viewing the Program was $54.95. Gagliardi Affidavit at ¶10B. However, in this case, unlike in *Bello*, the Court cannot calculate damages by multiplying this amount by the estimated capacity of the restaurant. The two investigators who visited D'Amigos Restaurant while the Program was being shown have provided drastically different estimates of the establishment's capacity. One investigator, Joseph W. Descovich – who entered the restaurant at 10:10 p.m. on November 27, 2004 and left one minute later – estimated that the establishment had a capacity of 40 people and counted 23 patrons. However, a second investigator, Craig Carita, who was inside the restaurant between 12:50 and 12:53 a.m. on November 28, 2004, counted 42 patrons and estimated the capacity at 75 people.

In light of the contradictory estimates, this court declines to calculate damages using the seating capacity of the establishment. Rather, this Court adopts the approach used in *Morales* and other cases and will base its calculations on the maximum number of patrons actually observed by the investigators – namely, 42. This Court will, therefore, award damages of $2,307.90.

Plaintiff is also entitled to enhanced damages. It is beyond question that the § 605(a) violation "was committed willfully and for purposes of direct or indirect commercial advantage."

§ 605(e)(3)(C)(ii). After all, "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Googies Luncheonette*, 77 F. Supp. 2d at 490. However, in awarding enhanced damages, courts have borne in mind that "although the amount of damages should be an adequate deterrent, [a single] violation is not so serious as to warrant putting the restaurant out of business." *Garden City Boxing Club, Inc. v. Polanco*, No. 05 Civ. 3411 (DC), 2006 WL 305458, at *5 (S.D.N.Y. Feb 7, 2006).

In this case, it is apparent that D'Amigos Restaurant is a small business. Moreover, according to the "Piracy Affidavits," defendants did not collect a cover charge and had an average of only 32 or 33 patrons during the Program. Since whatever profits defendants reaped from their misdeeds were likely minimal, an award of $10,000 in enhanced damages should suffice to prevent defendants from repeating their conduct.

Attorneys' Fees and Costs

Section 605(e)(3)(B)(iii) expressly provides that a court "shall direct the recovery of full costs, including . . . reasonable attorneys' fees to an aggrieved party who prevails." Relying on this language, courts in this Circuit have repeatedly held that "under Section 605 the award of costs and attorneys' fees is mandatory." *Polanco*, 2006 WL 305458, at *4; *see also Morales*, 2005 WL 2476264, at *9. However, a party seeking attorneys' fees must nonetheless "support that request with contemporaneous time records that show, for each attorney, the date, the hours expended, and the nature of the work done." *Morales*, 2005 WL 2476264, at *9 (internal quotations and citations omitted).

Plaintiff's counsel has provided the required documentation. This Court has carefully reviewed the time records, which indicate that plaintiff's attorney spent five and one-quarter

6

hours on this case, and that a paralegal spent four hours. With the exception of the three-quarters of an hour of attorney's time and the one and one-half hours of paralegal's time spent to correct a defect in the original complaint, the time spent on this case appears to be reasonable.[2] In addition, although plaintiff's counsel has not attached a copy of her curriculum vitae, this Court is aware, based on its own research in this case, that plaintiff's counsel is very experienced in handling cases of this sort. Her fee of $200 per hour, and the $75 per hour fee she charges for her paralegal's time, are both well within the range awarded in this district. *See*, *e.g.*, *Commission Express Nat'l, Inc. v. Rikhy*, No. CV-03-4050 (CPS), 2006 WL 385323, at *6 (E.D.N.Y. Feb. 17, 2006) ("Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $300 for partners; $100 to $150 for junior associates and $200 to $250 for senior associates" and from $60 to $75 for paralegals). Accordingly, plaintiff is awarded attorneys' fees totaling $1,087.50.

With respect to costs, plaintiff is entitled to recover both the $250 filing fee and the $200 it cost to serve the original summons and complaint on the defendants.[3] However, there is a substantial question as to whether plaintiff is entitled to recover the $350 in "Investigation Fees" requested in the Attorney's Affidavit of Costs and Fees, dated February 6, 2006.

---

[2]Although the original complaint named Juan Rodriguez as a defendant, this pleading contained no substantive factual allegations whatsoever concerning Mr. Rodriguez. On October 17, 2005, plaintiff amended the complaint to rectify this defect. Since it appears that the amendment was necessary because of an oversight on the part of plaintiff's counsel, this Court declines to award attorneys' fees or costs relating to this amendment.

[3]For the reasons stated in footnote 2, *ante*, this Court declines to award the $225.00 it cost to serve the First Amended Complaint.

A plaintiff is entitled to recover its "full costs" under § 605(e)(3)(B)(iii). As this Court recently explained in *Kingvision Pay-Per-View, Ltd. v. Autar*, 426 F. Supp. 2d 59, 67 (E.D.N.Y. 2006), "full costs" both differ from, and can exceed, the "taxable costs" recoverable under 28 U.S.C. § 1920. Although the awarding of "full costs" is mandatory, *see*, *e.g.*, *Polanco*, 2006 WL 305458, at *4, "[t]he legislative history for § 605(e) instructs that the court has the power to direct the recovery of investigative fees, not that the court is required to order such an award." *International Cablevision, Inc. v. Noel*, 982 F. Supp. 904, 918 (W.D.N.Y. 1997).

In order to recover investigative costs, a plaintiff must make a showing similar to that required to recover attorneys' fees. *Id.* ("a request for investigative fees pursuant to §605(e)(3)(B)(iii) should be subject to the same level of scrutiny to which requests for attorneys' fees are subjected"). Thus, a plaintiff must document "(1) the amount of time necessary for the investigation; (2) how much the investigators charged per hour; [and] (3) why the investigators are qualified to demand the requested rate." *Id.*

In this case, the documentation supplied by plaintiff's counsel is insufficient. First, the invoices attached to the Gagliardi Affidavit as Exhibit D indicate that each of the investigators charged plaintiff $350. The Attorney's Affidavit merely refers to Exhibit D, but does not explain why plaintiff seeks to recover only half the $700 actually expended or what particular expenses plaintiff seeks to recover. Second, plaintiff has not adduced any evidence concerning the investigators' hourly rates or qualifications. Even assuming that Signal Auditing, like the investigators employed by plaintiff in other cases, charged $350 per hour, this rate would exceed the rate usually awarded to experienced attorneys in this district. *See*, *e.g.*, *LaBarbera v. J.E.T. Resources, Inc.*, 396 F. Supp. 2d 346, 352 (E.D.N.Y. 2005) (rates of $250 to $350 per hour are

unreasonably high for legal services in this district). Third, although the invoices identify the tasks performed by the investigators – *e.g.*, Pre-Surveillance Investigation, Surveillance, Paperwork and Photography – the invoices do not indicate the time the investigators spent performing each task.

Because of these deficiencies in the evidence concerning the investigative costs, this Court declines to award such costs. Accordingly, plaintiff is hereby awarded costs of $450.00.[4]

## CONCLUSION

For the reasons stated above, plaintiff's motion for a default judgment is granted. Defendants shall be jointly and severally liable to plaintiff for $2,307.90 in statutory damages pursuant to § 605(e)(3)(C)(i)(II); $10,000 in enhanced damages pursuant to § 605(e)(3)(C)(ii); $1,087.50 attorneys' fees and $450 in costs. Accordingly, the Clerk of Court is directed to enter judgment in favor of plaintiff and against defendants, jointly and severally, in the total amount of $13,845.40.

**SO ORDERED.**

                                                  /s/
                                    SANDRA L. TOWNES
                                    United States District Judge

Dated: Brooklyn, New York
       September 29, 2006

---

[4] Although Plaintiff's Memorandum of Law requests that this Court enter a permanent injunction pursuant to 47 U.S.C. §605(e)(3)(B)(i), *see* Pl. Memo at 9, plaintiff's counsel subsequently withdrew this request. *See* Letter to Hon. Sandra L. Townes from Julie Cohen Lonstein, Esq., dated May 10, 2006.

9